UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JEREMY HEBERT, ET AL.** | **CASE NO. 2:18-CV-00899** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PRIME INSURANCE CO., ET AL.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion for Sanctions [doc. 87] filed by plaintiffs Jeremy Hebert and Coca-J Truck'n, LLC. They seek to strike a supplemental expert report offered by defendants Gerardo Peralez, Jr.; Santa Barbara Services, LLC; and Prime Insurance Company (collectively, "defendants").[1] Defendants oppose the motion. Doc. 108.

### I.
### BACKGROUND

This suit arises from a motor vehicle accident that occurred on March 15, 2018. Plaintiff Jeremy Hebert was driving an 18-wheeler owned by his employer, Coca-J Truck'n LLC ("Coca-J"), on Interstate 210 in Calcasieu Parish, Louisiana. Hebert alleges that he had stopped due to traffic congestion when he was rear-ended by Gerardo Peralez Jr., who was also operating an 18-wheeler. Doc. 1, att. 2, pp. 3–4. As a result of the accident, Hebert alleges that he suffered serious bodily injury and that Coca-J sustained damage and loss of use to the truck and trailer Hebert was operating. *Id.* at 5.

---

[1] The court understands that defendant United Specialty Insurance Company is represented by separate counsel and has not opposed this motion. Nevertheless, it will use the collective "defendants" here for ease of reference.

Hebert and Coca-J filed suit against their uninsured/underinsured motorist insurer, United Specialty Insurance Company ("USIC"); Peralez; his employer Santa Barbara Services, LLC ("SBS"); and Santa Barbara's insurer, Prime Insurance Company ("Prime") in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Defendants removed the action to this court based on diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. By scheduling order dated March 21, 2019, the court set trial for May 26, 2020, and imposed various pretrial deadlines. Doc. 19. These included a discovery deadline of November 25, 2019, and expert disclosure/report deadlines of September 24, 2019, for plaintiffs and October 24, 2019, for defendants. *Id.* Pursuant to a consent motion, the court subsequently extended plaintiffs' expert deadline to October 24, 2019, and defendants' expert deadline to November 25, 2019, but left the other deadlines intact. Doc. 36.

Plaintiff's treating physician, Dr. Christopher Cenac, was deposed on October 23, 2019. Doc. 108, att. 1. He stated that Mr. Hebert required back surgery in the form of fusing his L4-L5 discs. Dr. Cenac also saw a need for fusion at L5-S1 but stated that he hoped to avoid the intervention for the time being, since Mr. Hebert was only 30 years old. *Id.* Nevertheless, Dr. Cenac wound up performing a fusion at both sites when he operated on December 10, 2019. Doc. 87, att. 2, p. 3.

Defendants' expert, orthopedic surgeon Dr. Samer Shamieh, completed an independent medical examination of Mr. Hebert on July 17, 2019. Doc. 87, att. 3. Plaintiffs assert that they were first provided with a copy of his report on December 17, 2019. Doc. 87, att. 1, p. 2. In the report, Dr. Shamieh agreed that Mr. Hebert might need "surgery in the form of L4-5 Decompression and Fusion," but maintained that the cause of Mr.

-2-

Hebert's back pain was a degenerative condition rather than the trauma of the accident. Doc. 87, att. 3, p. 10.

Dr. Shamieh was deposed on January 29, 2020, over a month after Mr. Hebert's operation. Doc. 87, att. 4. He noted that his report did not include records, including two imaging reports, from around the time of Mr. Hebert's surgery, but that he had subsequently received and reviewed them. *Id.* at 5–7; doc. 108, att. 2. He also admitted that he had not read Dr. Cenac's deposition or been aware of it until that day, even though the deposition was taken months before. Doc. 87, att. 4, p. 9. Instead, he relied on paraphrasing of the testimony from defense counsel shortly before his own deposition. *Id.* Finally, he stated that he was aware of the surgical procedure performed by Dr. Cenac and had reviewed his updated records. *Id.*

On April 7, 2020, Dr. Shamieh produced a supplemental expert report based on a review of updated records and questions submitted by defense counsel. Doc. 87, att. 2, p. 1. He elaborated on his opinion that Mr. Hebert would have required the L4-L5 surgery as a result of degenerative disease and added that he found no need for the L5-S1 fusion. *Id.* at 6–7. He also offered opinions on the necessity of treatments predating the surgery and his original report. *Id.*

Plaintiffs now move for sanctions under Federal Rule of Procedure 16(f), arguing that the supplemental report violates the court's scheduling order and that it impermissibly amends Dr. Shamieh's opinions. Defendants oppose the motion, maintaining that the report is timely and serves as a supplement under Rule 26(e).

## II.
## LAW & APPLICATION

Under the Federal Rules of Civil Procedure, disclosure of a witness retained to provide expert testimony must be made "at the times and in the sequence directed by the Court." Fed. R. Civ. P. 26(a)(2)(C). The disclosure must be accompanied by a written report prepared by the witness, containing "a complete statement of all opinions to be expressed and the basis and reasons for them." *Id.* at 26(a)(2)(B). Parties also have a duty to supplement when they learn that information previously disclosed is "in some material respect . . . incomplete or incorrect." Fed. R. Civ. P. 26(e). This duty extends to information included in an expert's report or offered during his deposition. *Id.* Supplements must be made within the time set forth for pretrial disclosures. Fed. R. Civ. P. 26(e)(2); *see id.* at 26(a)(3).

The duty to supplement under Rule 26(e) is not, however, "intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). Federal Rule of Civil Procedure 16(f) provides courts with the authority to "issue any just orders" as sanction for discovery misconduct, including failure to obey a scheduling order or other pretrial order. When a party uses Rule 26(e) to introduce an expert report that is not really "supplemental" but instead effectively replaces the earlier report, it may be excluded as untimely. *See In re C.F. Bean LLC*, 841 F.3d 365, 371 (5th Cir. 2016).

Finally, even when a report is both supplemental and timely under Rule 26(e), the court may exercise its wide discretion in pretrial matters to exclude it. *Nunn v. State Farm*

*Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *13–*14 (N.D. Tex. Jun. 22, 2010). As other courts have observed, tying the supplemental report deadline to the pretrial disclosure deadline creates problems when parties can use new information as an excuse to greatly expand on their expert reports so close to trial. *Jacobs v. Tapscott*, 2006 WL 2728827, at *11–*12 (N.D. Tex. Sep. 25, 2006) (citing *Tucker v. OHTSU Tire & Rubber Co.*, 49 F.Supp.2d 456 (D. Md. 1999)). Accordingly, the court "should not automatically permit testimony . . . as to the newly discovered information if, considering the facts of the case, it is convinced that doing so would be unfair or cause undue delay or expense." *Id.* To this end, the court should consider:

> (1) the explanation for making the supplemental disclosure at the time it is made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice.

*Id.*

In this matter, pretrial disclosures were due with the pretrial statements on April 7, 2020. Accordingly, Dr. Shamieh's second report is timely if it is truly supplemental. As plaintiffs note, however, Dr. Shamieh had most of the information relevant to Mr. Hebert's surgery since or before his deposition on January 29, 2020.[2] The "supplemental report" offers enhanced opinions on causation based on medical records that predate the original report, in response to questions posed by defense counsel. It also offers opinions on the

---

[2] Defendants complain that they were given this information only six days before the deposition. Given that they did not inform Dr. Shamieh of Dr. Cenac's deposition until the day of his own, and only summarized that testimony for him, the court cannot find defendants were prejudiced or otherwise forced to alter their preparation based on the delay.

necessity of the surgery performed and restrictions imposed, based on records which appeared largely available by the time of Dr. Shamieh's deposition.

"The line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction likely depends on the facts of the case." *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 2007 WL 5023541, at *8 (S.D. Tex. Feb. 1, 2007) (internal quotations omitted; cleaned up). Here, most of the opinions in the supplemental report are bolstering offered at the direction of counsel and based on information that was largely available to Dr. Shamieh during his first report. The opinions on the need for fusion of the L5-S1, cost of the operation, and post-operative restrictions appear supplemental as they are actually based on information unavailable at the time of the original report. These records, however, had been provided to Dr. Shamieh by the time of his deposition and could have informed his testimony on the necessity of treatment. Instead, defendants waited until the very last day of their deadline and used a thin reed of supplemental opinions to support impermissible expansions of Dr. Shamieh's original report.

Defendants offer no explanation for waiting until the last minute. Dr. Shamieh's opinion on the necessity of the procedure performed may prove valuable to them. However, this importance heightens the need to disclose the supplemental opinion in time for plaintiffs to properly prepare a response. Additionally, any limits on his supplemental report will not prevent him from testifying on the other opinions offered through his deposition and original report. Finally, a continuance is available because court operation orders relating to the COVID-19 pandemic have cut off the possibility of a jury trial until

July. Almost every other pretrial deadline in this matter has been met, though the court is loath to reopen discovery and subject plaintiffs to extra expense.

Based on the factors described above, the potential prejudice to plaintiffs outweighs any disadvantage to defendants. Accordingly, Dr. Shamieh may testify to the opinions covered in his original report and his deposition. His quasi-supplemental report, however, is stricken in its entirety and the witness may not offer any opinions supported by that document alone.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Motion [doc. 87] be **GRANTED** and that Dr. Shamieh's testimony be limited as described above.

**THUS DONE AND SIGNED** in Chambers on this 20th day of April, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**